IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ANN M. GONZALES,

       Plaintiff,

vs.                                                                                          Civ. No. 02-414 WJ/RHS

JO ANNE B. BARNHART, COMMISSIONER
OF THE SOCIAL SECURITY ADMINISTRATION,

       Defendant.


### MAGISTRATE JUDGE'S AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**Proposed Findings**

   1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed August 28, 2002 [Doc.# 8].  The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  Plaintiff, age 42, alleges a disability which commenced March 7, 1994 due to abdominal pain, status post hysterectomy with adhesions, an adjustment disorder with chronic depression and anxiety and a personality disorder.

   2.  Plaintiff's efforts to establish her disability have a lengthy procedural history. The Commissioner denied Plaintiff's applications for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Plaintiff could return to her past relevant

work and therefore was not disabled.  Tr.18-19.  The Appeals Council declined review of the ALJ's decision.  Ms. Gonzales appealed that denial to the United States District Court.  See Gonzales v Apfel, CIV. NO. 98-462 MV/LCS. The Commissioner then made an unopposed motion to remand for further administrative proceedings in order to "obtain consultative gastrointestinal and mental status examinations with psychological testing and functional assessments," obtain updated medical information and testimony,  reevaluate the claimant's subjective complaints and RFC, and make  findings concerning her past relevant work. Tr.at 404-05. The ALJ's decision was remanded on February 11, 1999.  Tr.at 406-07.

   3. A supplemental hearing was held  September 20, 1999.  A second decision was entered November 22, 1999, again finding that she was not disabled.  Tr.at 492. The Appeals Council reviewed that decision, and on May 13, 2000,  remanded the case to a different ALJ for the taking of additional evidence, for reevaluation of the alleged mental impairments and for further consideration of her residual functional capacity.  Tr.at 523-24.

   4. The third hearing was held  May 22, 2001. Following that hearing, the ALJ found that Ms. Gonzales had severe impairments, that she was unable to perform her past relevant work, and that she retained the capacity to perform other available work, which rendered her not disabled. Tr.at 393-94.  The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner.   Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

   5. The standard of review in social security appeals is whether the Commissioner's  final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the

Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

6. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to follow the United States District Court Order that required the Commissioner to obtain a gastrointestinal examination with a functional assessment; (2) the ALJ's residual functional capacity finding is unclear; (3)the ALJ failed to give proper weight to the treating physician's opinion; and (4) the ALJ's credibility finding is contrary to law.

7. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Id. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability application. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

8. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

9. In the decision following the first hearing, the ALJ found that Ms. Gonzales was not disabled at the fourth step of the sequential evaluation process because she was able to perform her past work. On remand, after a second hearing, the ALJ found that she was unable to perform her past relevant work as an electronics assembler, but that she could do light work consisting of simple, unskilled work activities and used the Medical Vocational Guideline("grids") to determine that other work existed that Ms. Gonzales could perform, again finding her not disabled. Following remand from the Appeals Council, ALJ used a vocational expert at the step five inquiry, finding that Ms. Gonzales could perform the jobs of office helper, ticket taker, and shipping receiving clerk which rendered her not disabled.

10. At the time of the Commissioner's decision, Ms. Gonzales was 41 years old with a high school diploma. Her past relevant work was as an electronics parts assembler and a dispatcher.

11. At the May 22, 2001 hearing Ms. Gonzales testified that she can do light housework and drive her daughter to school. Tr.at 614, 616-617. She can sit for 30 minutes at a time and stand for 15 minutes at a time. Tr.at 618. She can lift ten pounds, but cannot kneel or squat. Tr.at 619.

12. Plaintiff's complaints of abdominal pain began in 1989 when she was pregnant. Tr. at 93. She had an abnormal Pap smear six weeks post-partum, which led to a laser procedure on her cervix in October 1990 and a D &C in December 1990. Tr. at 109,114. In September 1991, Dr. Ronald Dehyle performed a laparoscopic procedure for tubal ligation and diagnosis of her pelvic pain. During the procedure, a large cyst and an implant of endometriosis were removed from her left ovary. Tr.at 129-30. She continued to complain of severe pain and on November 14, 1991,

Dr. Dehyle performed a total abdominal hysterectomy, left salpingo-oophorectomy (removal of her left ovary and fallopian tube) and incidental appendectomy. Tr.at 136-37. On December 9,1991, when a laparotomy was done to investigate a pelvic mass, Dr. Dehyle found "massive pelvic adhesions." He performed a right salpingo-oophorectomy and lysis of the adhesions. Tr. at 157.

13. Plaintiff continued to experience pain and various medications were prescribed, chiropractic manipulation and psychological counseling were tried and abdominal incisional blocks were performed without significant benefit. Tr.at 177. On March 12, 1993, Plaintiff was examined by Dr. Brain Delahoussaye, a pain management specialist. He noted that she had a shortening of her abdominal musculature and treated her with Floromethane spray and stretch but she only achieved slight relaxation as a result of that treatment. His diagnosis was residual abdominal incisional pain and abdominal myofacial pain. Tr.at 177-79.

14. On July 29,1993, Dr. Dehyle attempted another laparoscopy but was unable to complete the procedure. He noted that there was "no way I could get through this [the adhesions] without potential damage to bowel and omentum." Tr at 183. On August 10, 1993, he performed a laparotomy instead and found "the entire pelvis, right and left side, socked in with large bowel and small bowel and omental adhesions." Lysis of adhesions was accomplished again. Tr at 192.

15. Between August, 1991, and September, 1996, Dr. Thomas Gross served as Plaintiff's primary care physician. His records reflect multiple complaints of abdominal pain and many attempts to diagnose and treat her pain. Tr.at 411-35. In October, 1996, her primary care

physician became Dr. Luz Kwan-Swiderek. Her records also contain frequent complaints by Plaintiff of abdominal pain which has been unrelieved by medication or treatments. Tr.at 437-56.

**First Alleged Error**

16. Plaintiff alleges that the ALJ erred when he failed to obtain a gastrointestinal examination pursuant to the United States District Court Order, filed February 22, 1999. Tr.at 406. Initially, a consultative examination was performed by Dr. Eugene Toner. Tr.at 467-478. The second decision, filed on November 22, 1999, relied, in part, on Dr. Toner's report. On May 13, 2000, the Appeals Council remanded the case, finding that the ALJ had not followed the federal mandate because Dr. Toner is board certified in emergency medicine with a primary specialty in occupational medicine, not gastrointestinal medicine. Tr at 522. Another consultative examination was subsequently conducted by Dr. John Seibel, who is board certified in internal medicine and endocrinology. Tr. at 556. The examination specified by the Order has not been done.

17. The ALJ defended his decision to proceed without the examination by an appropriate specialist based on one brief telephone conversation with Dr. Kwan-Swiderek in which she opined that no useful information would be provided by such a consultation. Tr.at 580,390. The Court notes that the ALJ apparently accepted the opinion of Dr. Kwan-Swiderek on this issue while simultaneously rejecting her opinion regarding plaintiff's disability. The ALJ stated that "it would be unreasonable for a non-medical person, such as myself, to insist that further testing be performed." Tr. at 390.

18. The Order requiring the Commissioner to obtain a gastrointestinal examination was unequivocal. The ALJ does not have discretion to disregard the Court's instructions, therefore, the case must be remanded to obtain additional evidence from an examination by a gastrointestinal specialist.

**Second Alleged Error**

19. Plaintiff alleges that the ALJ's residual functional capacity ("RFC") finding is unclear. At step five of the sequential evaluation process, the burden shifts to the Commissioner to show that the claimant has the RFC for some level of work. Thompson, 987 F.2d.1482, 1487 (citations omitted). Residual functional capacity is "the claimant's maximum sustained work capability." Davidson v. Sec'y of HHS, 912 F.2d 1246, 1253 (10th Cir. 1990); 20 C.F.R. Pt.404, Subpt.P, App.2 § 200.00(c)

20. The ALJ found that Ms. Gonzales had the RFC for "a limited range of light work consistent with my hypothetical question to the vocational expert as set forth in detail below." Tr. at 388. The ALJ went on to explain that Ms. Gonzales' "ability to perform all or substantially all of the requirements of light work is impeded by additional nonexertional limitations." Tr. at 392. He described the hypothetical question that he asked the vocational expert as whether jobs exist in the national economy for an individual of the claimant's age, education, and work experience with an RFC for "light work with moderate limitation on the ability to remember and carry out complex and detailed instructions." Tr. at 392. This hypothetical question appears to include no exertional limitations on Plaintiff's ability to do light work. The decision goes on to state that "claimant's exertional limitations do not allow her to

7

perform the full range of light work." Tr. at 394.  The hypothetical question to the vocational expert, therefore, appears to be incomplete.  On remand, the ALJ should clarify what specific exertional and nonexertional limitations prevent Plaintiff from performing the full range of light work and include those limitations in hypothetical questions posed to the VE.

**Third Alleged Error**

21.   Plaintiff alleges that the ALJ violated the treating physician doctrine. A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.2d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).      The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled. Id. at 290.

22.   On October 10, 1994, Dr. Gross stated that Ms. Gonzales appeared "to be disabled by her symptoms." Tr.at 258.  The ALJ found that this opinion was entitled to "very little weight" because it was brief, conclusory and unsupported by medical evidence. Tr.at 388. On March 4, 1999, Dr. Kwan-Swiderek wrote that Ms. Gonzales "remains symptomatic and is not capable of any gainful employment", Tr.at 437, and in August, 2000, Dr. Kwan-Swiderek stated that Ms. Gonzales "is considered unemployable and is expected not to improve." Tr.at 569.  The ALJ rejected this opinion "because it is not supported by objective medical findings."  Tr. at 389.  On March 15, 1999, Dr. Dehyle wrote that "because of severe adhesions and bowel problems and chronic pain [Ms. Gonzales] has had lifestyle compromise...I do not see any relief in sight for this chronic pain." Tr.at 436.  This statement is included in the decision but not specifically addressed

by the ALJ. These physicians have provided the majority of medical treatment to Plaintiff since 1991.

23. The ALJ found the opinions of two consultative physicians, both of whom examined Ms. Gonzales, more reliable than those of her treating physicians. Dr.Eugene Toner's July 7, 1999, report stated that he felt Plaintiff's pain was probably psychosomatic and found no functional limitations, except that lifting was limited to 50 pounds occasionally, and 25 pounds frequently, due to her size, weight and age. Tr.at 467-477. Dr. John Seibel's November 9, 2000, report indicated no functional limitations. Tr.at 539-540, 556-558.

24. The ALJ also cited Dr. Gopal Reddy's refusal to perform exploratory surgery as evidence that Plaintiff's adhesions were not significant. Tr. at 388. Dr. Reddy actually opined that "because of previous extensive adhesions, I believe laparoscopy is probably contraindicated" Tr. at 256. Dr. Kwan-Swiderek agreed with this assessment when she stated that "going back in for adhesiolysis would likely cause more adhesions in the future." Tr.at 442.

25. Opinions of physicians "who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987). Furthermore, Dr. Dehyle is a specialist in obstetrics and gynecology, and his opinion should accordingly be given additional weight. See Goatcher, 52 F.2d at 289; 20 C.F.R. §§ 404.1529(d)(5) & 416.927(d)(5)(1995). Although he did not specifically address the issue of disability, he continued to define her adhesions as severe, despite performing three operative procedures which included lysis of adhesions. Tr.at 436.

9

26. It is clearly within the ALJ's authority to reject physician's opinions which are unsupported by the objective evidence of record. See <u>Castellano v. Sec. of Health & Hum. Serv.</u>, 26 F.3d 1027, 1029 (10th Cir. 1994). However, the medical evidence before the ALJ, with the exception of the reports by consulting physicians, is generally supportive of the treating physicians' opinions about the nature and severity of a claimant's impairments. The determination of disability is an issue reserved to the Commissioner, not the physician, <u>See Reid v Chater</u>, 71 F.3d 372, 374, (10th Cir. 1995) (citation omitted), however, " he cannot interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant." <u>Kemp v Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987).

27. The ALJ improperly gave greater weight to the opinion of the consulting physicians who examined Plaintiff once as opposed to the opinions of her treating physicians which were supported by a decade of personal observation and examination. The Court will remand for reconsideration of the medical evidence under the appropriate legal standard.

**Fourth Alleged Error**

28. Plaintiff contends that the ALJ's credibility finding is contrary to the law. The ALJ expressly found that "claimant's allegations regarding her limitations are not totally credible for reasons set forth in the body of the decision." <u>Tr.at 393</u>.

29. The Court ordinarily defers to the ALJ as trier of fact on credibility. See <u>Thompson</u>, 987 F.2d at 1489 (citations omitted). However, deference is not an absolute rule. See <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1993). The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. <u>Kepler v.</u>

Chater, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations omitted). Failure to make credibility findings regarding critical testimony "fatally undermines the argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability." Id.

30. The ALJ gave three specific reasons that he disbelieved Plaintiff's testimony regarding the severity of her pain. He noted that: (1) that her doctors have found no definitive cause for her pain; (2) she was not taking prescription pain medication at the time of the hearing; and (3) her daily activities were inconsistent with her allegations of pain. Based on these factors, he found that her testimony was not "totally credible".Tr.at 391.

31. A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Thompson, 987 F.2d at 1488. (citation omitted). Before the ALJ may consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. Id. (citing Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987)); accord, Winfred v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). Only a "loose nexus" must be established between the proven impairment and the claimant's subjective allegations of pain. Id. The evidence discussed above shows that Plaintiff has adhesions which could be the cause of her alleged pain. Consequently, the ALJ's statement that there is no objective basis for Plaintiff's complaint of pain is not supported by substantial evidence.

32. The ALJ is then required to consider all the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain." Id. The ALJ must investigate all avenues presented that relate to subjective complaints, including nature,

location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).

33. The ALJ's decision states that "if her pain was as severe as she describes it, one would expect that she would insist on stronger pain medications." Tr. at 391. Ms. Gonzales testified that she does not like to take pain pills because they are not effective and she was afraid they would render her unable to care for her daughter. Tr at 613, 620. The record reflects that over the past ten years Plaintiff's doctors have prescribed a plethora of medications in an effort to ease her discomfort and anxiety including Percocet, Tylenol 3, Amytriptylline, Xanax, Paxil, Librax, Prozac, Zoloft, Serazone, Donnatol, and Buspar. She tried progressive muscle relaxation techniques, acupuncture, chiropractic therapy and psychotherapy as well as surgery. There have been genuine attempts to reduce her pain. Plaintiff's reasons for refusing to take prescription medications may be valid and should have been considered by the ALJ.

34. The final reason the ALJ cites for finding Plaintiff's testimony regarding the severity of her pain not credible was her daily activities. The ALJ may consider the claimant's activities in discounting subjective complaints. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

35. Ms. Gonzales testified that she drives her daughter to school and does some housework. She shops for groceries and attends to her personal needs. She attends church about twice a month. She stated that she can sit for 30 minutes at a time and stand for 15 minutes at a time. She said that she had to lie down several times during the day because of her pain and that the smallest exertion gives her a pulling pain inside. Tr. 614-619.

36. The ALJ specifically rejected the Plaintiff's testimony regarding her functional limitations saying " they were not consistent with the record as a whole," Nevertheless, the ALJ relied on Ms. Gonzales' testimony regarding the list of activities she was able to perform to justify his credibility determination. Tr.at 391.

37. The sporadic performance of [household tasks] does not establish that a person is capable of substantial gainful activity. Frey, 816 F.2d at 516-517, (citing Broadbent v Harris, 698 F.2d 407, 413 (10th Cir, 1983)). The ALJ may not rely on the Plaintiff's minimal daily activities as substantial evidence that she does not suffer from disabling pain.

38. On remand, the ALJ may again decide that Plaintiff's allegations of disabling pain are not credible. The ALJ's decision should be supported by a detailed explanations of the factors which support his finding and his credibility analysis should address Plaintiff's explanation for her failure to take prescription medication for her pain.

39. In conclusion, the Court finds that: (1) the ALJ failed to comply with the Order of the United States District Court to obtain a consultative gastrointestinal examination; (2) the ALJ's residual functional capacity finding is unclear; (3) the ALJ failed to give proper weight to the treating physicians' opinions; and (4) the ALJ's credibility finding is not supported by substantial evidence.

**Recommendation**

The Court recommends that Plaintiff's Motion to Reverse and Remand for a Hearing [Doc. # 8] be granted and that this case be remanded to the Commissioner to: (1) obtain a consultative gastrointestinal examination with a functional assessment as previously ordered by

the U.S. District Court ; (2) clarify the residual functional capacity finding; (3) reconsider the medical evidence under the proper legal standard; and (4) conduct a credibility inquiry consistent with this opinion.

The parties shall be given the opportunity to object as described in 28 U.S.C.§ 636(b)(1)(C). Objections shall be filed within ten days of the date of entry of the proposed disposition.

                                                  */s/ Robert Hayes Scott*
                                                  ROBERT HAYES SCOTT
                                                  UNITED STATES MAGISTRATE JUDGE